**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| MUBARAK H. IBRAHIM, | Case No. 26-cv-03821 |
| Debtor. | |
| GUS PALOIAN, not personally but solely in his capacity as the duly appointed chapter 7 trustee for the estate of MUBARAK H. IBRAHIM, | Hon. Judge Sunil R. Harjani |
| Plaintiff, | |
| v. | |
| SAWSAN HOMSI, BADR ALI, PETROLEUM INVESTMENT PROPERTIES, LLC, CALUMET FUEL, INC., NASR ALI, CALUMET PARK MOBILE, LLC, AHMAD ZAHDAN, AJ 119TH, INC., and AJOMON JOY, | |
| Defendants. | |

**MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER**
**(IN THE ALTERNATIVE)**

Defendants, Nasr Ali ("Nasr Ali"), Petroleum Investment Properties, LLC ("PIP"), Calumet Fuel, Inc. (individually as "Calumet Fuel" and collectively with Nasr Ali and PIP as the "Ali Defendants"), by their counsel Carlson Dash, LLC, respectfully move for leave to appeal the Order entered March 24, 2026 (Bank. Dkt. 117), pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004. This motion is filed in the alternative to the extent the appeal is not as of right.

On April 6, 2026, the Ali Defendants filed their Notice of Appeal (Bankr. Dkt. 126) with the Bankruptcy Court. The Notice of Appeal was transmitted to the District Court for the Northern District of Illinois on April 7, 2026, and assigned Case No. 26-cv-03821.

## I.     STATEMENT OF FACTS AND PROCEDURE

1.     Debtor Mubarak H. Ibrahim filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 28, 2023, commencing Case No. 23-07031 in the United States Bankruptcy Court for the Northern District of Illinois.

1

2. The property at issue is located at 11900 Marshfield Avenue, Calumet Park, Illinois ("Property"), and it is a multi-unit commercial center that the Ali Defendants admit included a service station, mini-mart, full-service car wash, auto repair shop, and associated commercial tenants. Answer, ¶ 1.

3. At no point either before the bankruptcy filing, during the pendency of the bankruptcy case, or before or after the commencement of this adversary proceeding did the Trustee, the Spyropoulos Trust, or any other party file a lis pendens against the Property, record a notice of claim, or take any other action to encumber title or provide constructive notice to owners of record, prospective purchasers or lenders of any claim asserted against the Property.

4. As a result, Nasr Ali, PIP, and Calumet Fuel were at all times legally free to sell, transfer, encumber, or hypothecate the Property and their respective interests without restriction, limitation, or notice of any claim asserted by the Trustee or any other party.

5. The Ali Defendants admit that on December 23, 2016, 11900 Marshfield LLC purchased the Property from Standard Bank & Trust Co. as trustee for a total purchase price of $4,500,000. Answer, ¶ 3.

6. The Ali Defendants admit that in approximately 2018, the Debtor purchased additional membership interests in 11900 Marshfield LLC, leaving the Debtor at 95% and Nasr Ali at 5%. Answer, ¶ 47.

7. On December 4, 2019, the Spyropoulos Trust obtained a judgment against the Debtor in the Circuit Court of Cook County for $11,082,995.50. Complaint, ¶ 57 (Bankr. Dkt. 1).

8. The Ali Defendants admit that the closing on PIP's purchase of the Property from PropCo occurred on January 31, 2022, and that the purchase price was $5,500,000. Answer, ¶ 62. Three independent appraisals conducted at or near the time of the transaction valued the Property at $4,370,000 (Retail Petroleum, June 2018), $5,870,000 (JLL, May 2019), and $5,535,000 (Cushman & Wakefield, July 2019). Answer, ¶ 98.

9. The Ali Defendants admit that the two transactions, consisting of PIP's acquisition of the Property and Calumet Fuel's stock or membership interest acquisition of the business operations, inclusive of all known and unknown liabilities, were contingent on each other. Answer, ¶ 106.

10. The Ali Defendants admit that PIP sold the Property to Calumet Park Mobil, LLC on February 14, 2025, for total consideration of $11,500,000, consisting of $6,500,000 in cash plus a $5,000,000 purchase-money mortgage. Answer, ¶¶ 111, 112.

11. The Debtor filed this bankruptcy case on May 28, 2023. The Trustee filed this adversary proceeding on May 23, 2025, two years after the bankruptcy filing. Complaint (Bankr. Dkt. 1).

12. On February 4, 2026, the Trustee filed a Motion for Temporary Restraining Order and Preliminary Injunction (Bankr. Dkt. 75), seeking to freeze funds held by PIP and Nasr Ali and

to redirect all future mortgage payments under the Calumet Mobil purchase-money mortgage to the Clerk of Court or an escrow agent.

13.     The Trustee's motion was not supported by any affidavit, verified complaint, testimony, or evidentiary submission establishing the specific facts required for injunctive relief under Federal Rule of Civil Procedure 65(b)(1).

14.     The Ali Defendants filed a written opposition to the Trustee's motion (Bankr. Dkt. 88), arguing, among other things, that the relief sought constituted an unauthorized prejudgment attachment of non-debtor assets barred by *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), and that the Trustee had not satisfied the requirements of Rule 65.

15.     A contested hearing was held on March 10, 2026. No testimony was taken and no evidence was admitted at the hearing.

16.     At the March 10, 2026 hearing, the Ali Defendants raised on the record their arguments and objections, including that the Bankruptcy Court lacked constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011), to enter a final injunctive order, and that any order should include *de novo* review language consistent with *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014).

17.     Following the March 10, 2026 hearing, both parties submitted competing proposed forms of order. The Ali Defendants' proposed order included prospective-only scope, escrow agent requirements, mortgagee protection provisions, preservation of affirmative defenses, and *de novo* review language. At the March 10, 2026 hearing, the Bankruptcy Court stated on the record that it intended to continue proceeding in the adversary proceeding until the District Court directed otherwise.

18.     On March 24, 2026, the Bankruptcy Court entered the Trustee's proposed form of order during the status hearing, without a hearing on the competing proposals. The Order was labeled as a Temporary Restraining Order (Bankr. Dkt. 117).

19.     The terms of the Order freezes approximately $1,410,758.58 in proceeds held by PIP and Calumet Fuel. Order (Bankr. Dkt. 117).

20.     The terms of the Order freezes approximately $1,500,235.20 in mortgage payments previously made by Calumet Park Mobil, LLC, including payments received before the Order was entered and also including payments received before the adversary was even filed by reason of a mortgage entered into before the adversary was ever filed. Order (Bankr. Dkt. 117).

21.     The terms of the Order redirects all future mortgage payments under the Calumet Mobil purchase-money mortgage to an escrow agent. Order (Bankr. Dkt. 117).

22.     Every substantive factual paragraph of the Order is prefaced by the phrases "it is noted" or "it is alleged." Order (Bankr. Dkt. 117).

23. The Order contains a finding of "probability of success on the merits." Order (Bankr. Dkt. 117).

24. The Order contains no findings of fact and no conclusions of law as required by Federal Rule of Civil Procedure 52(a), applicable through Federal Rule of Bankruptcy Procedure 7052.

25. The Order contains no *de novo* review language and was entered as a final, enforceable order.

26. While the Court subsequently scheduled a hearing on the TRO, the Order is already in all respects operating as a Preliminary Injunction; there is no further relief that can be granted. The Trustee obtained Preliminary Injunctive relief by way of this Order at the outset; at a TRO hearing.

27. On March 18, 2026, the Ali Defendants filed their Jury Demand.

28. On March 18, 2026, the Ali Defendants filed their Motion to Withdraw the Reference, which is separately pending before the United States District Court for the Northern District of Illinois, Case No. 26-cv-03086.

29. The Order was entered before the deadline for the Ali Defendants to file any answer or affirmative defenses.

30. On March 31, 2026, the Ali Defendants filed their Answer, Affirmative Defenses (Bankr. Dkt. 122); fourteen days after entry of the Order.

31. In their Answer, the Ali Defendants stated that all transactions involving the Ali Defendants were arm's-length transactions for fair value, documented by written agreements, supported by independent appraisals, and with separate counsel representing each side. Answer, ¶ 7.

32. In their Answer, the Ali Defendants asserted seventeen affirmative defenses, including bona fide purchaser status and the good-faith subsequent transferee exemption under 11 U.S.C. § 550(b)(1) and 740 ILCS 160/9.

33. In their Answer, the Ali Defendants included a Statement Regarding Core/Non-Core Status pursuant to Federal Rule of Bankruptcy Procedure 7012(b), stating that this proceeding is not a core proceeding in which the Bankruptcy Court has constitutional authority to enter final orders, and expressly declining to consent to entry of final orders or judgment by the Bankruptcy Court.

34. On April 7, 2026, the Ali Defendants also filed a Notice of Appeal and, in the alternative, a Motion for Leave to Appeal Interlocutory Order, contending that the Order is in substance a preliminary injunction appealable as of right under 28 U.S.C. § 158(a)(1).

## II.    STATEMENT OF QUESTIONS PRESENTED

35.    Whether the Order entered March 24, 2026 (Bankr. Dkt. 117)—though denominated a Temporary Restraining Order is in substance a preliminary injunction appealable as of right under 28 U.S.C. § 158(a)(1), because it grants the complete relief available at a preliminary injunction hearing: a retroactive freeze of approximately $2.9 million in existing assets, redirection of all future mortgage payments to escrow, and an express judicial finding of probability of success on the merits, leaving nothing additional for a preliminary injunction to impose.

36.    Whether the Bankruptcy Court committed reversible error in entering the Order, given that it: (a) rests exclusively on unverified complaint allegations, and relied upon no evidence and no testimony; (b) was entered before any answer or affirmative defenses were filed by the Ali Defendants; (c) contains no findings of fact or conclusions of law as required by Federal Rule of Civil Procedure 52(a), and made applicable through Federal Rule of Bankruptcy Procedure 7052; and (d) operates retroactively to freeze assets and redirect income streams, which serves as direct evidence of the Order's full and permanent consequences of a preliminary injunction without any of its procedural safeguards.

37.    Whether the Bankruptcy Court, having entered an Order that functions as a preliminary injunction adjudicating the probability of success on the merits of state-law claims against non-debtor defendants who have demanded a jury trial, acted in excess of its constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).

38.    Whether, as a consequence of the *Stern* limitation, the Order must be treated as proposed findings of fact and conclusions of law subject to *de novo* review by the District Court under *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014), and whether the Order's entry as a final enforceable injunction, without *de novo* review language and without any findings of fact, requires the Order to be vacated as a matter of law.

## III.    ARGUMENT

### A.    The TRO Operates as an Injunction

39.    The threshold issue on this motion is whether the Order denominated a temporary restraining order ("TRO") is in substance a preliminary injunction. If it is, the appeal is as of right under 28 U.S.C. § 158(a)(1) and this motion is unnecessary.

40.    A preliminary injunction hearing in this case would address four elements: (a) likelihood of success on the merits; (b) irreparable harm absent injunctive relief; (c) the balance of hardships; and (d) the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The relief available upon a finding in the Trustee's favor on all four elements would be: (i) a freeze of existing assets; (ii) redirection of future payments to escrow; and (iii) a merits finding of probability of success.

41.    The Order already grants all three forms of relief. It freezes approximately $1,410,758.58 in proceeds held by PIP and Calumet Fuel. It freezes approximately $1,500,235.20

in mortgage payments previously made by Calumet Park Mobil, LLC. It redirects all future mortgage payments to escrow. And it rests on a finding of "probability of success on the merits."

42.     There is literally nothing additional that a preliminary injunction could impose. The Trustee cannot obtain a broader freeze because the Order already captures all existing assets and all future income.

43.     The Trustee cannot obtain a stronger merits finding because the "probability of success" is the standard for both TROs and preliminary injunctions.

44.     The Trustee cannot redirect additional payment streams because all mortgage payments are already being redirected by the terms of the Order.

45.     The preliminary injunction hearing is, in practical terms, a formality. The relief has already been fully and permanently imposed.

46.     The consequence is devastating and irreversible. PIP's entire income stream from the Property is gone. Approximately $2.9 million in existing assets is frozen. These are not temporary inconveniences pending a fuller hearing. These are the exact harms that a preliminary injunction would impose; but the relief was imposed now, without the procedural protections that a preliminary injunction requires, by a court that lacked requisite Constitutional authority.

47.     The procedural protections that distinguish a TRO from a preliminary injunction include a full adversarial hearing, the opportunity to present evidence, the ability to engage in cross-examination, the requirement that there exist detailed findings of fact, a considered evaluation of the balance of hardships. These safeguards exist precisely because the relief at the preliminary injunction stage is more consequential. Here, the consequences were imposed at the TRO stage. The protections were not. The Ali Defendants received the full weight of a preliminary injunction with none of its procedural safeguards.

48.     Where the substance of an order is indistinguishable from a preliminary injunction, courts treat it as one regardless of its label. *Department of Education v. California*, 604 U.S. 650 (2025) (Supreme Court treated a TRO with "many of the hallmarks of a preliminary injunction" as appealable); *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974); *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981) (TRO appealable when it operates as a preliminary injunction in scope or duration); *Constructors, Inc. v. City of Chicago*, 485 F.3d 362 (7th Cir. 2007) (TRO after notice and hearing is "procedurally as well as functionally even more like a preliminary injunction").

### B.     Controlling Questions of Law

49.     The Order raises controlling questions of law: (a) whether the Bankruptcy Court has constitutional authority under *Stern v. Marshall* to enter substantive injunctive orders on state-law claims against non-debtor parties who have demanded a jury trial; (b) whether such orders must be entered as proposed findings subject to *de novo* review under *Executive Benefits v. Arkison*, 573 U.S. 25 (2014); and (c) whether a retroactive asset freeze that grants the identical relief available at a preliminary injunction hearing exceeds the scope of a TRO under Rule 65(b).

50.     These questions are controlling because they determine the Bankruptcy Court's authority to proceed. If the Order is constitutionally infirm, every subsequent proceeding built upon it is tainted.

## C.     Substantial Ground for Difference of Opinion

51.     The Bankruptcy Court is proceeding as though it has full authority to enter final injunctive orders. The Ali Defendants contend the contrary under *Stern* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). The pending Motion to Withdraw the Reference before the District Court confirms the question is contested.

52.     The Bankruptcy Court's own statement on the record, which was essentially that it intends to continue proceeding until the District Court tells it to stop is an express acknowledgment that its authority is disputed on one hand, but not that it will not be restrained on the other.

## D.     Immediate Appeal Materially Advances Termination

53.     If the Order is improper, allowing the Bankruptcy Court to proceed to a preliminary injunction hearing and trial will waste judicial resources and compound harm. The preliminary injunction hearing will be a formality because the relief has already been fully imposed. A trial conducted by a court that may lack constitutional authority risks entry of a judgment that will be subject to *de novo* review in any event.

54.     Immediate review prevents the scenario of trying the case twice: once before the Bankruptcy Court, and again on *de novo* review before the District Court.

55.     The Ali Defendants are suffering ongoing, irreparable harm. Approximately $2.9 million is frozen by the terms of the Order. And, by the terms of the same Order, all future mortgage payments are redirected. This harm accrues daily and cannot be remedied by a post-trial appeal.

## IV.     STAY PENDING APPEAL

56.     Pursuant to Federal Rule of Bankruptcy Procedure 8007, the Ali Defendants request a stay of the Order pending disposition of this appeal.

57.     The Order was entered based entirely on unverified complaint allegations. It contains no findings of fact. It lacks *de novo* review language. It operates retroactively. It grants the full relief available at a preliminary injunction hearing without any of the required procedural protections. The Ali Defendants have substantial defenses including bona fide purchaser status, the § 550(b)(1) good-faith subsequent transferee exemption supported by three independent appraisals ($4,370,000; $5,870,000; $5,535,000), total consideration of over $6 million across both transactions, and evidence that the Trustee's $9,600,000 appraisal is inflated by the inclusion of a car wash ($1,500,000) owned by a separate entity, equipment values, and third-party gaming revenue, and it fails to account for the fact that the Ali Defendants acquired all known and unknown liabilities because it was a stock transfer as well.

7

58. Approximately $2.9 million is frozen. PIP's entire income stream is redirected. PIP cannot service its own obligations. The harm is ongoing, accrues daily, and is the precise harm that would be caused by a preliminary injunction because it is a preliminary injunction.

59. A stay of the Order actually preserves the status quo. The property has not been transferred or dissipated since the adversary proceeding was filed. No lis pendens was filed. No emergency existed. The Trustee created an emergency and created a situation where the process and procedure of this case was flipped, putting the Ali Defendants in a position of vindicating their rights in order to get their property back. This is completely backwards, and serves as a cautionary tale as to why we have procedural rules and constitutional safeguards; so that the system of justice operates fairly and justly for all.

60. The public interest favors ensuring that injunctive relief is entered only with proper procedural protections, that non-debtor parties' constitutional rights are respected, and that courts act within their constitutional authority.

## VI.    RELIEF REQUESTED

WHEREFORE, The Ali Defendants respectfully request that the District Court:

A) Find that the Order entered March 24, 2026 (Dkt. 117) is a preliminary injunction in substance and effect, and that this appeal is as of right under 28 U.S.C. § 158(a)(1);

B) In the alternative, grant leave to appeal the Order as an interlocutory order pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004;

C) Vacate the Order in its entirety on the grounds that it was entered without evidence, without testimony, without findings of fact, without conclusions of law, and before any answer or affirmative defenses were filed;

D) Find that the Order exceeds the permissible scope of a temporary restraining order under Federal Rule of Civil Procedure 65(b), applicable through Federal Rule of Bankruptcy Procedure 7065, because it grants the full relief available at a preliminary injunction hearing and is unlimited in duration;

E) Find that the Bankruptcy Court lacked constitutional authority to enter a final, enforceable injunctive order adjudicating the merits of state-law claims against non-debtor parties who have demanded a jury trial;

F) Find that any order entered by the Bankruptcy Court on such claims must be treated as proposed findings of fact and conclusions of law subject to *de novo* review by this Court;

G) Stay the Order pending disposition of this appeal pursuant to Federal Rule of Bankruptcy Procedure 8007;

H) Expedite the briefing schedule and set this matter for hearing at the earliest available date; and

9

      I)      Grant such other and further relief as this Court deems just and proper.

Dated: April 7, 2026.

Respectfully submitted,

Nasr Ali, Petroleum Investment Properties, LLC, and Calumet Fuel, Inc.


By: /s/  Kurt M. Carlson
            One of their attorneys

Kurt M. Carlson ARDC No. 6236568
Mona Naser ARDC No. 6278114
**CARLSON DASH, LLC**
216 S. Jefferson St., Suite 303
Chicago, Illinois 60661
Telephone: 312-382-1600
E-mail: kcarlson@carlsondash.com
E-mail: mnaser@carlsondash.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Kurt M. Carlson, hereby certify that on **April 7, 2026**, I caused the foregoing document to be served upon all parties listed below via the Court's CM/ECF system, by first-class mail, by placing a copy of same in a postage prepaid envelope and depositing same in the U.S. Mail, and/or by electronic mail, addressed as follows:

Jonathan M Cyrluk
**Carpenter Lipps LLP**
180 N. LaSalle St., Suite 2105
Chicago, IL 60601
cyrluk@carpenterlipps.com

Steve C Moeller
**Carpenter Lipps LLP**
180 N. LaSalle St., Suite 2105
Chicago, IL 60601
moeller@carpenterlipps.com

Derek D Samz
**Golan Christie Taglia LLP**
70 W. Madison St., Suite 1500
Chicago, IL 60602
ddsamz@gct.law

Matthew M Showel
**Golan Christie Taglia LLP**
70 W. Madison St., Suite 1500
Chicago, IL 60602
mmshowel@gct.law

Matthew Luzadder
**Kelley Drye & Warren LLP**
333 W. Wacker Dr., Suite 2600
Chicago, IL 60606
mluzadder@kelleydrye.com

Alla Taher
**Kelley Drye & Warren LLP**
333 W. Wacker Dr., Suite 2600
Chicago, IL 60606
ataher@kelleydrye.com

Stephen Scallan
**Law Offices of Scallan, P.C.**
53 W. Jackson Blvd., Suite 560
Chicago, IL 606040
stevescallan@scallanpc.com

Sawsan Homsi
9401 Odell Avenue
Bridgeview, IL 60455
*VIA U.S. MAIL ONLY*

/s/ Kurt M. Carlson

10